## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SHUBHRA SHARMA,** | : | |
| **Plaintiff** | : | |
| | : | |
| **Vs.** | : | **C.A. NO.** |
| | : | |
| **CONNECTICUT COLLEGE,** | : | |
| **Defendant** | : | **AUGUST 2, 2016** |

## <u>COMPLAINT</u>

### INTRODUCTION

1. This is an action for monetary damages, costs, attorney's fees, and other relief as a result of Defendant's discriminatory conduct undertaken against Plaintiff on the basis of her gender, race and ethnicity in violation of federal and state law.

2. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 *et. seq.* ("CFEPA"), and the common law of the State of Connecticut.

### JURISDICTION

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it presents a federal question under 42 U.S.C. § 2000e *et. seq.*

4. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

5. Plaintiff dually filed her claims with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and Equal Employment Opportunity Commission ("EEOC") on August 15, 2014.

6. Plaintiff received a Release of Jurisdiction from the CHRO on or about July 27, 2016, 2016 and a Right to Sue letter from the EEOC on or about July 25, 2016.

## PARTIES

7. Plaintiff, Shubrha Sharma, presently residing in Austin, Texas, is an Asian female whose national origin is Indian.

8. Defendant, Connecticut College, is a non-stock co-educational, private residential institution located at 270 Mohegan Avenue, New London, CT. Defendant Connecticut College is an employer within the meaning of, and subject to the provisions of, Title VII and CFEPA.

9. Plaintiff worked for Defendant at its 740 William Street, New London, CT location.

## BACKGROUND

10. Plaintiff began working for Defendant on January 1, 2010 as the Vandana Shiva Assistant Professor of Gender & Women's Studies.

11. Plaintiff's letter of appointment provided for a tenure review after 3.5 years at Defendant.

12. In the academic year 2011/2012, Plaintiff was reappointed after a Third Year Review.

13. Plaintiff's Third Year Review praised her research noting the publication of her book, "*Neoliberalism As Betrayal: State, Feminism, and Women's Educational Program in India,*" in June 2011 which was developed over a ten year period of research, and then written and revised at Respondent in the spring of 2010.

14. The Committee on Appointments, Promotion and Tenure ("CAPT") also acknowledged that as of the date of Plaintiff's Review, she had begun to lay the groundwork for two new research projects.

15. The CAPT then made recommendations for the duration of the shortened probationary period, while congratulating Plaintiff on the research front in the publication of her book.

16. Following her Third Year Review, Plaintiff met with the Dean of Faculty, Roger Brooks, and Chair of the Department of Gender and Women's Studies ("the Department"), Mab Segrest, to discuss the review process and her progress toward tenure.

17. Plaintiff was advised to add to the service component, but received no advice regarding teaching and scholarship.

18. No one in a position of authority at Defendant informed Plaintiff that she was required to publish articles and attend conferences in the short time left between her Third Year Review and the tenure decision.

19. Defendant also failed to advise Plaintiff of the Department's standard for tenure applicable to scholarship.

20. The following academic year Plaintiff took a sabbatical and an unpaid leave of absence and travelled to India to engage in long term research for her next book.

21. When Plaintiff returned from sabbatical and leave, she was required to take over the duties of Chair of the Department and was compelled to participate in a review of the Department by a visiting committee.  This was a time-intensive task that Plaintiff asked to be postponed but was refused.

22. Furthermore, burdening a junior professor with significant administrative responsibilities just prior to the tenure decision is highly unusual based on past practice and custom at Defendant.

23. During Plaintiff's sabbatical and leave and while performing administratinve duties upon her return, Plaintiff nevertheless published articles in a peer reviewed, on-line journal, called The Feminist Wire.

24. Contrary to the Information For Faculty's ("IFF") dictate that the Chair of the Department provide guidance at least on an annual basis, Plaintiff received no additional guidance from her Department Chair regarding publication.

25. The only additional guidance on the standard applicable to the tenure decision came from the Departmental Guidelines for Scholarship (April 17, 2013) published by the Department of Anthropology because the Department of Gender & Women's Studies did not communicate such guidelines, and Plaintiff is an anthropologist by degree and training.

26. The Anthropology guidelines state, "By the time of tenure review, a book should be published or accepted for publication." The publication of Plaintiff's

book that represents a new direction in her research beyond her dissertation, combined with her prospectus for an upcoming book, satisfies the requirement that "one or more publications or projects should demonstrate evidence of a new, or postdoctoral, research agenda."

27. Despite a unanimous recommendation for tenure from the *Ad Hoc* Committee, on February 21, 2014, the CAPT denied Plaintiff tenure on the scholarship criteria based on an alleged failure to "demonstrate an increase in mastery" over the work done for her Ph.D and because the CAPT was critical of Plaintiff's teaching based on comments in student evaluations, even though such comments were inconsistent with peer review of Plaintiff's teaching.

28. On March 27, 2014 Plaintiff filed an appeal as to the decision to denial of tenure.

29. Plaintiff noted in her grievance that the CAPT shifted or increased the scholarship standard for tenure without advising her that more than a book was required to meet the scholarship standard for tenure.

30. The CAPT also denied Plaintiff a positive recommendation on the teaching criteria.  In this area of review, the CAPT relied upon selective use of comments in student evaluations and ignored six peer review evaluations.

31. Defendant's Grievance Committee released its report on May 12, 2014.

32. The Grievance Committee found violations of the procedures applicable to the tenure decision-making process and that Plaintiff had been exposed to an "intimidating and hostile" work environment during her probationary period.

33. The Grievance Committee Chair noted that Department Chair Segrest did not provide the annual evaluations required by IFF 6.1.2.d for the three years before and after the Third Year Review.

34. The failure to advise Plaintiff of "any departmental standards affecting reappointment, promotion and the grating of tenure," especially in the years following the Third Year Review when she was using her sabbatical and an unpaid leave of absence to gather material in India for her next book, instead of publishing articles that were suddenly a requirement of tenure by the CAPT, was a material breach of the procedures applicable to the tenure decision-making process.

35. The Grievance Committee also found that Dean Brooks violated the IFF 1.4.6 by not establishing a tenure review committee in a timely manner affecting the amount of scrutiny that Plaintiff's case for tenure deserved.

36. By letter dated April 8, 2014, President Bergeron denied Plaintiff's appeal stating that she did not present "evidence of significant new research – either papers, conference presentation, or published articles – completed between 2010 and 2014."

37. President Bergeron's letter defining the standard for tenure as "evidence of significant new research" in the time period stated presents a definition of scholarship applicable to the tenure decision that was never communicated to Plaintiff until after the tenure decision was made.

38. There was a shifting, higher standard applied to Plaintiff's tenure case, and Defendant deviated from its policies and procedures.

39. Plaintiff was held to a higher standard than similarly situated male employees and non-Asian, Indian employees.

40. Following the denial of tenure, Plaintiff has been unable to find employment in an academic setting.

41. As a result of the denial of tenure and the discrimination against Plaintiff, Plaintiff suffered emotional distress, harm to reputation and loss of enjoyment of life as a result of the destruction of Plaintiff's academic career.

**COUNT ONE:        NEGLIGENT MISREPRESENTATION**

1 – 41. Paragraphs 1 through 41 are incorporated by reference and made paragraphs 1 through 41 of Count One as though more fully set forth herein.

42. Defendant failed to exercise due care in obtaining and communicating information to the Plaintiff regarding the standards applicable to the tenure decision, including, but not limited to the standard of scholarship sufficient for promotion and tenure.

43. Plaintiff relied upon the communications and advice she was given regarding her service. While she received no advice regarding teaching or scholarship following her Third Year Review, specifically with respect to publications, Plaintiff continued work on her book and published articles in a peer reviewed online site and followed the Departmental Guidelines for Scholarship published by the Department of Anthropology.

44. Contrary to the representations that Plaintiff received concerning the standard applicable to scholarship and Plaintiff's reasonable expectations, the Department Chair failed to provide advice and guidance to Plaintiff regarding

the department's standard for scholarship. Further, the CAPT shifted or

increased the scholarship standard for tenure without advising Plaintiff.

President Bergeron also presented a new definition of scholarship applicable

to the tenure decision that was never communicated to me until after the

tenure decision was made

45. Thus, Defendant failed to provide critical information to Plaintiff to guide her

scholarship and/or applied a shifting standard at the time of tenure contrary to

what Plaintiff had been previously told.

46. As a result of Defendant's negligent misrepresentation, Plaintiff was denied

tenure and had suffered damages including the loss of wages and benefits,

emotional distress, loss of enjoyment of life, the destruction of her career in

academia and harm to her reputation.

## COUNT TWO:       BREACH OF CONTRACT

1 – 45. Paragraphs 1 through 45 of Count One are incorporated by reference and

made paragraphs 1 through 45 of Count Two as though more fully set forth

herein.

46. The terms of Plaintiff's employment on tenure track were expressed and

implied.  The terms of employment appeared in written documents such as the

letter of appointment, the Connecticut College Information For Faculty Manual

("Faculty Manual" or "F.M."); official statements from administrators, such as

the Dean of Faculty, and from the CAPT, annual evaluations, when provided,

the Third Year Review, and reappointment letters referring to the criteria

applicable to the tenure decision along with Plaintiff's progress toward the

tenure decision.  The terms and performance of the employment agreement also derive from verbal and written communications from the tenured members of the college, the circumstances of Plaintiff's employment and academic policies, customs and usage at Connecticut College, as demonstrated in past tenure decisions, and generally accepted practice and policies recognized by academic institutions, such as the American Association of University Professors' 1940 Statement of Principles on Academic Freedom and Tenure, which counsels that the terms and conditions of employment on tenure track should be in writing and communicated to the faculty member at the commencement of employment.

47. Defendant breached the employment agreement, including the implied covenant of good faith and fair dealing, which required that neither party would take any action to defeat the reasonable expectations of the other party to the employment agreement, when Defendant failed to properly communicate the standard applicable to tenure decision involving scholarship as set forth herein and then denied Plaintiff tenure despite the fact Plaintiff met the standard that was communicated.

48. As a result of Defendant's breach of contract Plaintiff suffered damages in the loss of wages and benefits resulting from the loss of employment and the destruction of her academic career.

**COUNT THREE:    DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq*.**

1 – 47. Paragraphs 1 through 47 of Count Two are incorporated by reference and made paragraphs 1 through 47 of Count Three as though more fully set forth herein.

48. An examination of tenure and reappointment files of similarly situated candidates who received positive recommendations and were granted tenure demonstrate that Plaintiff was held to a higher standard with respect to teaching and scholarship than assistant professors who were outside of Plaintiff's protected class.  In several cases the same decision makers on the CAPT recommended tenure for candidates who had not published as Plaintiff had done and whose teaching was subjected to similar criticisms in student evaluation.

49. The racial and gender animus by the CAPT, Department Chair, the Dean of Faculty and President harbored towards Plaintiff influenced the denial of tenure and was displayed in the denial of tenure based upon the failure to adhere to the same standards that governed the granting of tenure to similarly situated assistant professors who were not female or who were not Asian.

50. Based on the foregoing, Defendant discriminated against Plaintiff on the basis of race, ethnicity and gender in the terms and conditions of her employment, including the denial of tenure and, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

51. Defendant's actions were intentional in that they were willful, wanton, and taken with reckless disregard of Plaintiff's rights.

52. As a result of Defendant's discriminatory actions, Plaintiff has suffered damages, including, but not limited to, economic and non-economic damages in the form of loss of wages and benefits, emotional distress, loss of enjoyment of life and profession, and harm to reputation.

53. As a further result of Defendant's discriminatory conduct, Plaintiff has incurred, and will continue to incur, attorney's fees and costs.

**COUNT FOUR:     DISCRIMINATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONN. GEN. STAT. § 46a-60 *et seq.***

1 – 49. Paragraphs 1 through 49 of Count Three are incorporated by reference and made paragraphs 1 through 49 of Count Four as though more fully set forth herein.

50. Based on the foregoing, Defendant discriminated against Plaintiff on the basis of race, ethnicity and gender in the terms and conditions of her employment, including the denial of tenure and, in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq.

51. Defendant's actions were intentional in that they were willful, wanton, and taken with reckless disregard of Plaintiff's rights.

52. As a result of Defendant's discriminatory actions, Plaintiff has suffered damages, including, but not limited to, economic and non-economic damages in the form of loss of wages and benefits, emotional distress, loss of enjoyment of life and profession, and harm to reputation.

53. As a further result of Defendant's discriminatory conduct, Plaintiff has incurred, and will continue to incur, attorney's fees and costs.

**DEMAND FOR RELIEF**

    **WHEREFORE**, the plaintiff demands a TRIAL BY JURY and judgment against the Defendant and the following legal and equitable relief:

1.  An order granting Plaintiff tenure and promotion and awarding her the salary and benefits she would have received had she been granted promotion and tenure in 2014;

2.  Economic damages including lost wages and benefits;

3.  Non-economic damages, but not limited to, damages for emotional distress, pain, humiliation and embarrassment, loss of enjoyment of life, loss of enjoyment of profession, and harm to reputation;

4.  Punitive damages pursuant to 42 U.S.C. § 1981a and Connecticut General Statutes § 46a-104 as legal relief;

5.  Interest;

6.  Attorney's fees and litigation costs, 42 U.S.C. § 2000e-5 and 42 U.S.C. § 1988, and Connecticut General Statutes § 46a-104; and

7.  Such other further monetary or injunctive relief as this Court deems necessary and proper.

Dated at New London, Connecticut this 2nd day of August, 2016

PLAINTIFF
SHUBHRA SHARMA

By: _____
Jacques J. Parenteau (ct09771)
Madsen Prestley & Parenteau, LLC
105 Huntington Street
New London, CT 06320
Tel: (860) 442-2466
Fax: (860) 447-9206
Email: jparenteau@mppjustice.com